BALDOCK, Circuit Judge.
This appeal presents us with a most unusual set of facts. Plaintiff RMA Ventures California originally filed suit against Defendants Sun America Life Insurance and Midland Loan Services for breach of contract and misrepresentation. Plaintiff alleged that Defendants failed to implement a required interest rate reduction pursuant to the parties’ mortgage agreement. The district court granted summary judgment for Defendants, holding that Plaintiffs voluntary interest payments over a four-year period precluded recovery on its claims. Plaintiff appeals the district court’s decision. Defendants contend, however, that we should dismiss Plaintiffs appeal for lack of standing. Defendants’ basis for their standing argument is where we are thrown the proverbial “curve ball.” Specifically, Defendants argue that Plaintiff no longer owns the legal rights to this cause of action because Defendants purchased them at a public execution sale. Adding to the case’s anomalous posture is the fact that the execution sale was meant to satisfy Defendants’ award of attorneys’ fees — an award based solely on the grant of summary judgment which Plaintiff now attacks on appeal.
We have jurisdiction under 28 U.S.C. § 1291. Acknowledging the unique circumstances involved here, we conclude that Plaintiff lacks standing to pursue this appeal. Moreover, we hold that Plaintiff waived its right to challenge Defendants’ purchase of the legal right to this cause of action by failing to appeal the district court’s denial of Plaintiffs motion to stay or quash the execution sale. We, therefore, grant Defendants’ motion to dismiss this appeal and decline to reach the merits of Plaintiffs breach of contract and misrepresentation claims.
*1072 I.
In November 2007, the district court granted summary judgment for Defendants, dismissing Plaintiffs breach of contract and misrepresentation claims.[1] Plaintiff subsequently filed a motion requesting a new trial or, in the alternative, that the district court alter or amend its judgment. See Fed.R.Civ.P. 59. The district court denied Plaintiffs motion. Thereafter, Defendants requested attorneys’ fees and costs as the prevailing party pursuant to Federal Rule of Civil Procedure 54(d) and California law.[2] Meanwhile, Plaintiff filed a notice of appeal for the district court’s grant of summary judgment. In March 2008, over Plaintiffs objection, the district court granted Defendants’ motion for attorneys’ fees and entered judgment for Defendants in the amount of $87,563.07. Plaintiff did not pay the money judgment, appeal the award, or post a supersedeas bond pending the outcome of the merits appeal.
On April 11, 2008, Defendants obtained a writ of execution from the Clerk of the United States District Court for the District of Utah to enforce payment of the district court’s award of attorneys’ fees. Two weeks later, in accordance with Utah state procedure, as provided by Federal Rule of Civil Procedure 69(a)(1), the Salt Lake City Deputy Constable issued notice that a public execution sale would be held on May 15, 2008, to raise funds in satisfaction of Defendants’ money judgment. The property noticed for public sale, however, was Plaintiffs right to the chose in action (¿a, the legal claims) against Defendants in the instant case, including Plaintiffs right to appeal the district court’s grant of summary judgment.[3] Counsel for Plaintiff received personal service of the Deputy Constable’s notice.
On May 8, 2008, Plaintiff filed a motion to stay or quash the execution sale. Plaintiff raised various jurisdictional and due process arguments before the district court, but never alleged an inability to pay the judgment of attorneys’ fees or post a supersedeas bond. The district court denied Plaintiffs motion to stay or quash the execution sale. Plaintiff did not appeal this decision. On May 15, 2008, Defendants, as the highest bidder, purchased Plaintiffs right to this lawsuit for $10,000 at the public execution sale.[4] Defendant subsequently filed its Certificate of Sale with the United States District Court for the District of Utah on May 22, 2008.[5] Plaintiff nevertheless presses on with this *1073 appeal. In response, Defendants argue Plaintiff no longer owns this cause of action, and request that we grant their motion to dismiss. See Fed. R.App. P. 27; 10th Cir. R. 27.2.
II.
The question of Plaintiffs standing involves a prudential concern. A well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others. See Fed.R.Civ.P. 17(a) (establishing that only the real party in interest is permitted to bring an action in federal court); Rawoof v. Texor Petrol. Co., Inc., 521 F.3d 750, 757 (7th Cir.2008) (noting that Federal Rule of Civil Procedure 17’s real party in interest requirement is essentially the codification of a well-established prudential-standing limitation precluding litigants from enforcing the rights of others); American Immigration Lawyers Ass’n v. Reno, 199 F.3d 1352, 1357 (D.C.Cir.2000) (recognizing that federal courts have a general prohibition on allowing a litigant to raise another person’s legal rights). In other words, a plaintiffs standing is contingent upon the entitlement to enforce an asserted right. See Rawoof, 521 F.3d at 756. At the outset of this litigation, Plaintiff was clearly the real party in interest. The question for us now, however, is whether Defendants obtained Plaintiffs rights to this lawsuit, thereby divesting Plaintiff of standing. See Lippoldt v. Cole, 468 F.3d 1204, 1216 (10th Cir.2006) (noting that a “plaintiff must continue to have standing throughout the litigation”).[6] To resolve this issue, we must assess the efficacy of Defendants’ actions following summary judgment.
A.
An award of attorneys’ fees is “collateral to and separate from the decision on the merits.” Budinich v. Becton Dickinson and Co., 486 U.S. 196, 200, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (internal quotations omitted); see also id. (“[I]t is indisputable that a claim for attorney’s fees is not part of the merits of the action to which the fees pertain.”); Art Janpol Volkswagen, Inc. v. Fiat Motors of North America, Inc., 767 F.2d 690, 697 (10th Cir.1985) (“[A] judgment on the merits and a subsequent attorneys [sic] fees determination are separate and distinct proceedings.”). Thus, a decision on the merits and a decision on attorneys’ fees are considered separate, final decisions of the district court, subject to appeal under 28 U.S.C. § 1291. See Budinich, 486 U.S. at 202-03, 108 S.Ct. 1717; Art Janpol Volkswagen, 767 F.2d at 697 (“For purposes of appeal, each determination results in a separate and distinct final decision and the filing of a separate notice of appeal is therefore required to obtain review.”).
After summary judgment and the district court’s denial of Plaintiffs motion for a new trial or to alter or amend the judgment, Defendants requested attorneys’ fees and costs under Federal Rule of Civil Procedure 54(d). Plaintiff objected to Defendants’ motion solely on timeliness grounds, arguing that Rule 54(d) requires that a prevailing party file a motion for attorneys’ fees within 14 days after entry of the judgment. See Fed.R.Civ.P. 54(d)(2)(B)(I). The district court dismissed Plaintiffs argument, however, holding that the filing period for attorneys’ *1074 fees was tolled when Plaintiff filed a motion for a new trial or to alter or amend the judgment. Thus, the district court ruled Defendants’ motion for attorneys’ fees was timely and entered judgment for Defendants in the amount of $87,563.07. As noted, Plaintiff did not appeal this ruling, pay the judgment to Defendants, or post a supersedeas bond pending the outcome of its merits appeal.
B.
Federal courts “have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities.” Degen v. United States, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). Because the award of attorneys’ fees was a separate and final judgment, the district court here was entitled to take steps necessary to enforce its decision. See Peacock v. Thomas, 516 U.S. 349, 359, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (“To protect and aid the collection of a federal judgment, the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution.”); Young v. United States ex. rel. Vuitton et Fils S.A., 481 U.S. 787, 809, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (noting that district courts’ ability to enforce their orders and judgments is “a subject that directly concerns the functioning of the Judiciary”).
A judgment granting attorneys’ fees is “collected or executed in the same manner as any other money judgment.” 10 James Wm. Moore et al., Moore’s Federal Practice § 54.158[2][a], at 54-262 (3d ed. 2009). Generally, the first step in enforcing a money judgment is to obtain a writ of execution. See id.', Fed.R.Civ.P. 69(a)(1) (noting that “[a] money judgment is enforced by a writ of execution”). Accordingly, Defendants here properly sought — and the district court was within its authority to issue — a writ of execution allowing Defendants to collect on their money judgment. See Palmer v. City of Chicago, 806 F.2d 1316, 1320 (7th Cir.1986) (acknowledging that district courts have the power to enforce an award of fees even before entry of a final judgment).
C.
Once a federal district court issues a writ of execution, a judgment creditor must follow the procedure on execution “established by the law of the state in which the district court sits.” 10 Moore’s § 54.158[2][a], at 54-262; see also Fed.R.Civ.P. 69(a)(1) (“The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution— must accord with the procedure of the state where the court is located....”); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3012 at 147 (2d ed. 1997) (“The court will look to the state statutes and to state-court decisions construing [the statutes on execution].”). Thus, as required by Rule 69(a)(1) of the Federal Rules of Civil Procedure, Defendants here turned to the method of execution prescribed under Utah law.[7]
*1075 Pursuant to Utah law, Defendants attempted to satisfy their money judgment by purchasing Plaintiffs legal right to pursue this action. We have found no Utah authority, and Plaintiff cites none, precluding the execution sale of Plaintiffs chose in action against Defendants. See Andrews v. Roadway Express Inc., 473 F.3d 565, 568 (5th Cir.2006) (noting that no authority existed to supplant the state law process for the enforcement of a writ of execution). To the contrary, under Utah Rule of Civil Procedure 69(f), “all choses in action may ordinarily be acquired by a creditor through attachment and execution.”[8] Applied Medical Techs., Inc. v. Eames, 44 P.3d 699, 701 (Utah 2002) (emphasis added); see also 13 Moore’s § 69.03[2], at 69-11 (noting that courts may look to state law to determine what property is exempt from execution). In fact, the Utah Supreme Court has expressly held “that a defendant can purchase claims, ie., choses in action, pending against itself and then move to dismiss those claims.” Applied Medical Techs., 44 P.3d at 701-02. Thus, at least on the surface of Defendants’ actions, we find no problem in law or fact to negate Defendants’ contention that they obtained the rights to this cause of action, thereby depriving Plaintiff of standing.
III.
We recognize the circumstances of this case present a degree of discomfort. Namely, if Plaintiffs standing were not at issue, and we were to reverse the district court’s grant of summary judgment for Defendants, the corresponding award of attorneys’ fees would also be reversed.8 [9] See Palmer, 806 F.2d at 1320 (“[Wjhen a judgment on which an award of attorney’s fees to the prevailing party is based is reversed, the award, of course, falls with it.”); 15B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3915.6, at 344 (“If no appeal was taken from the award, some means must be found to avoid the unseemly spectacle of enforcing a fee award based on a judgment that has been reversed.”). Thus, the $87,563.07 debt owed by Plaintiff — upon which Defendants purchased the rights to this cause of action — would likely be extinguished if we reversed the underlying grant of summary judgment.
Despite such concerns, we are unable to ignore the fact that a public execution sale took place in which Defendants purchased Plaintiffs legal right to continue this appeal for $10,000. See GP Credit Co., LLC v. Orlando Residence, Ltd., 349 F.3d 976, 980 (7th Cir.2003) (noting that a chose in action is an intangible form of property that can be sold at a foreclosure sale, whereby the purchaser steps into the shoes of the prior owner and becomes the claimant in the suit); Citizens Nat’l Bank v. Dixieland Forest Products, LLC, 935 So.2d 1004, 1013 (Miss.2006) (holding that the defendant — who was also the plaintiffs judgment creditor after prevailing on a *1076 counterclaim — could purchase the plaintiffs pending claims at a public execution sale, thereby becoming the real party in interest); Applied Medical Techs., 44 P.3d at 702-03 (recognizing that “causes of action are regularly sold” and “the sale cuts off the former plaintiffs right to pursue those claims”).
More to the point, even if a sufficient ground exists for us to void the sale of this cause of action, Plaintiff waived any such argument by failing to appeal the district court’s denial of the motion to stay or quash execution.[10] See Star Ins. Co. v. Risk Marketing Group Inc., 561 F.3d 656, 659 (7th Cir.2009) (noting that district court orders issued to complete the execution of a final judgment are separate from the original lawsuit and are appealable). Because Plaintiff did not appeal the district court’s decision allowing the execution sale to proceed, we will not consider Plaintiffs arguments attacking the sale’s lawfulness. See Edmonston v. Sisk, 156 F.2d 300, 302 (10th Cir.1946) (noting that the validity of a writ of execution cannot be questioned collaterally); 12 Wright et al. Federal Practice and Procedure, § 3013, at 158 (“A writ of execution, once issued, cannot be collaterally attacked.”). Accordingly, Defendants are now the true owner’s of Plaintiffs lawsuit and may move to dismiss the claims pending before us on appeal. See Citizens Nat’l Bank, 935 So.2d at 1014-15 (dismissing the plaintiffs pending claims against the defendant after the defendant purchased those claims at a sheriffs execution sale); Applied Medical Techs., 44 P.3d at 704 (holding that the defendant could dismiss pending claims against itself after legally purchasing those claims at a sheriffs execution sale).
We note that Plaintiff had numerous opportunities to avoid this outcome. First, Plaintiff could have appealed the award of attorneys’ fees. See Citizens Nat’l Bank, 935 So.2d at 1014 (emphasizing that the plaintiff failed to appeal the final judgment which served as the basis for the defendant’s levy upon the plaintiffs pending chose in action). Second, Plaintiff could have paid the judgment. Third, Plaintiff could have filed a supersedeas bond with the district court pending the outcome of the merits appeal. See Peacock, 516 U.S. at 359, 116 S.Ct. 862 (noting that the Federal Rules of Civil Procedure are designed to secure a judgment creditor’s position, ordinarily by a supersedeas bond). As mentioned, Plaintiff has never argued an inability to pay the judgment or post a bond.
For the foregoing reasons, we decline to reach the merits of Plaintiffs appeal, and GRANT Defendants’ motion to dismiss.

. Because we hold that Plaintiff no longer has standing, we do not recount the facts underlying the merits appeal.

. Applying Utah’s choice-of-law test, the district court determined that California law applied to Plaintiff’s breach of contract and misrepresentation claims.

. Unsurprisingly, counsel for Defendants drafted the language in the Deputy Constable’s notice.

. Declining to attend the sale, Plaintiff made no attempt to bid on its property up for auction.

. The Certificate of Sale states that Defendants purchased:
ALL CHOSES IN ACTION, CLAIMS, COUNTERCLAIMS, CAUSES OF ACTION, AND APPEALS ARISING THEREFROM; RIGHTS TO PAYMENT; AND RIGHTS TO COMPENSATION OF EVERY KIND AND NATURE, WHICH PLAINTIFF RMA VENTURES CALIFORNIA MAY HAVE AGAINST SUNAMERICA LIFE INSURANCE COMPANY AND MIDLAND LOAN SERVICES, INC., INCLUDING BUT NOT LIMITED TO, ALL SUCH CLAIMS AND CAUSES OF ACTION AND APPEALS ARISING THEREFROM, FILED IN OR RELATED TO RMA VENTURES CALIFORNIA V. SUNAMERICA LIFE INSURANCE COMPANY, ET AL., CASE NO. 2:03-CV-740.

. We note that Defendants' request that we dismiss this appeal could also be described as a mootness argument. See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).”) (citations and internal quotations omitted).

. Plaintiff contends that 28 U.S.C. § 1291— granting this Court appellate jurisdiction— negates Utah's procedures on execution. See Fed.R.Civ.P. 69(a) (“The procedure on execution ... must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.”) (emphasis added). Likewise, Plaintiff asserts that even if a judgment is executed, the judgment debtor still retains the right to appeal. See Strong v. Laubach, 443 F.3d 1297, 1299 (10th Cir.2006). Plaintiff's arguments are in-apposite. Defendants do not suggest that (1) our jurisdiction under § 1291 has been removed, or (2) the right to appeal the claims against Defendants no longer exists. Rather, Defendants argue that they purchased the legal rights to this cause of action and, therefore, Plaintiff is no longer the party entitled to enforce those rights.

. We note that this rule allowing the purchase of a pending chose in action varies from state to state. Compare Citizens Nat’l Bank v. Dixieland Forest Prods., LLC, 935 So.2d 1004, 1010 (Miss.2006) (“[A] chose in action is personal property subject to a writ of execution.”), and Arbie Mineral Feed Co., Inc. v. Farm Bureau Mut. Ins. Co., 462 N.W.2d 677, 680 (Iowa 1990) (“Iowa ... has adopted the broad form of statutory execution authorizing levy on choses in action.”); with Cal.Civ.Proc. Code § 699.720(a)(3) (prohibiting the purchase of a pending cause of action at an execution sale), and Prodigy Ctrs./Atlanta v. T-C Assocs., 269 Ga. 522, 501 S.E.2d 209, 211 n. 3 (1998) ("Choses in action are not liable to be seized and sold under execution, unless made so specifically by statute.”) (quotations and citation omitted).

. We express no opinion on the likelihood of success for Plaintiff's underlying merits appeal.

. We express no opinion on the merits of Plaintiff's various jurisdictional and due process arguments against the execution sale's validity.