**136 Nev., Advance Opinion 19**
IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT G. REYNOLDS, AN
INDIVIDUAL; AND DIAMANTI FINE
JEWELERS, LLC, A NEVADA LIMITED
LIABILITY COMPANY,
Appellants,
vs.
RAFFI TUFENKJIAN, AN
INDIVIDUAL; AND LUXURY
HOLDINGS LV, LLC, A NEVADA
LIMITED LIABILITY COMPANY,
Respondents.

No. 78187

**FILED**

APR 09 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Motion to substitute in as real parties in interest and dismiss appeal from a district court order granting summary judgment in a tort and breach of contract action. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Motion granted in part; appeal dismissed in part.*

Marx Law Firm PLLC and Bradley M. Marx, Las Vegas,
for Appellants.

Marquis Aurbach Coffing and Terry A. Moore and Christian T. Balducci, Las Vegas,
for Respondents.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

20-13445

## OPINION

By the Court, SILVER, J.:

A pending motion in this case provides us the opportunity to address the extent to which a judgment debtor's rights of action are subject to execution to satisfy a judgment. Respondents have filed a motion to substitute themselves in place of appellants and to voluntarily dismiss this appeal because they purchased appellants' rights and interests in the underlying district court action at a judgment execution sale. We agree with respondents in part. Although Nevada's judgment execution statutes permit a judgment creditor (respondents) to execute on a debtor's (appellants) personal property, including the right to recover a debt, money, or thing in action, those statutes limit the title the sheriff can convey at an execution sale to only that title which the debtor could convey himself. Nevada law, in turn, restricts the right to convey certain claims by making them unassignable. Accordingly, we hold that a judgment debtor's claims that are unassignable similarly cannot be purchased at an execution sale. As such, respondents did not purchase the rights to appellants' unassignable claims. Thus, we grant in part respondents' motion and dismiss this appeal as to appellants' assignable claims—negligent misrepresentation and breach of contract.

### FACTS AND PROCEDURAL HISTORY

Appellants Robert G. Reynolds and Diamanti Fine Jewelers, LLC, brought the underlying action against respondents Raffi Tufenkjian and Luxury Holdings LV, LLC. Appellants alleged breach of contract, fraud, and tort claims related to their purchase of a jewelry store from respondents, arguing that they relied on respondents' false representations of the store's value to their detriment. The district court entered summary




judgment for respondents, finding no genuine issues of material fact regarding respondents' alleged misrepresentations or appellants' justifiable reliance upon any of respondents' statements. The district court also awarded respondents $57,941.92 in attorney fees and costs pursuant to a provision in the parties' contract.

Appellants appealed the judgment but did not obtain a stay of execution on the award of attorney fees and costs, claiming they could not afford to post a supersedeas bond. While the appeal was pending, respondents obtained a writ of execution, which, in relevant part, allowed them to execute against Reynolds' personal property. The writ therefore directed the sheriff to "levy and seize upon any and all causes of action, claims, allegations, assertions or defenses of" appellants, including those in the underlying district court action.

At the sheriff's sale, respondents purchased, for $100, "all the rights, title and interest of" appellants in the district court action. Respondents now move to substitute themselves in place of appellants pursuant to NRAP 43 (allowing substitution of a party on appeal) and to voluntarily dismiss the appeal under NRAP 42(b) (allowing parties to voluntarily dismiss an appeal), on the basis that they now own the claims on appeal. Appellants respond that the Nevada Legislature did not intend for NRS 10.045, which defines personal property to include "things in action," to allow a party to purchase such "things in action" as a means to eliminate a litigant's appellate rights. They argue that granting the motion would prevent parties who may not have the financial ability to satisfy a contested judgment from asserting their rights to an appeal.

This court ordered the parties to submit supplemental briefing on the issue of whether each of appellants' claims were properly assigned to

 

respondents as a result of the execution sale. *See Reynolds v. Tufenkjian*, Docket No. 78187 (Order for Supplemental Briefing, Nov. 1, 2019). Respondents argue that all of the claims were properly assigned based on statutory law, while appellants argue that, because the claims were personal to Reynolds, they were not assignable, and that this court should void the execution sale on public policy grounds.

## DISCUSSION

*Only assignable things in action are subject to execution under Nevada law*

NRS 21.320 allows a district court to order a judgment debtor's nonexempt property "be applied toward the satisfaction of the judgment" against him. NRS 21.080(1) provides that property liable to such execution includes all of the judgment debtor's personal property. *But see* NRS 21.090 (listing property exempt from execution). The definition of "[p]ersonal property" includes "things in action." NRS 10.045.

Nevada's general policy is that a statute specifying property that is liable to execution "must be liberally construed for the benefit of creditors." *Sportsco Enters. v. Morris*, 112 Nev. 625, 630, 917 P.2d 934, 937 (1996) (citing 33 C.J.S. *Executions* § 18 (1942)). Referencing that general policy and the definition of a "thing in action" as "a right to bring an action to recover a debt, money, or thing," *Gallegos v. Malco Enters. of Nev., Inc.*, 127 Nev. 579, 582, 255 P.3d 1287, 1289 (2011) (quoting *Chose in Action*, *Black's Law Dictionary* (9th ed. 2009)), this court has concluded that "rights of action held by a judgment debtor are personal property subject to execution in satisfaction of a judgment," *id.* at 582, 255 P.3d at 1289. But in *Butwinick v. Hepner*, this court determined that "a 'thing in action' subject to execution . . . does not include a party's defenses to an action," 128 Nev. 718, 723, 291 P.3d 119, 121-22 (2012), because a party's defensive rights do not constitute a "right to bring an action to recover a debt, money,

or thing," *id.* at 722, 291 P.3d at 122 (quoting *Chose in Action, Black's Law Dictionary* (9th ed. 2009)).

In this case, respondents contend that, by purchasing appellants' "things in action" at the sheriff's sale, they are entitled to substitute themselves for appellants in this appeal as the now-owners of the claims being appealed. This would only be true, however, if "things in action" encompasses all of appellants' underlying claims. In this vein, appellants argue that claims that are personal in nature are not included in "things in action" and, therefore, respondents do not own appellants' personal claims and this court should deny the motion to substitute. They further argue that allowing the purchase of their claims improperly impedes on their appellate rights and therefore violates public policy.

Some jurisdictions that permit execution upon a debtor's "things in action" narrowly interpret the term to only include claims that, under that jurisdiction's law, the debtor could otherwise assign to another party. *See, e.g., Holt v. Stollenwerck*, 56 So. 912, 913 (Ala. 1911) (holding that "things in action" only includes assignable rights of action); *Wittenauer v. Kaelin*, 15 S.W.2d 461, 462-63 (Ky. Ct. App. 1929) (concluding that the term "chose in action" does not include any right of action that may not be assigned). Other jurisdictions apply a broader interpretation of "things in action" to include any claim for damages, without concern for the claim's assignability otherwise. *See, e.g., O'Grady v. Potts*, 396 P.2d 285, 289 (Kan. 1964) (characterizing a tort claim as a chose in action and therefore personal property); *Chi., Burlington & Quincy R.R. Co. v. Dunn*, 52 Ill. 260, 264 (1869) ("A right to sue for an injury, is a right of action—it is a thing in action, and is property . . . ."). For the reasons set forth below, we agree

SUPREME COURT
OF
NEVADA

(O) 1947A

with the former approach and hold that "things in action" only includes those claims that the judgment debtor has the power to assign.

Nevada is one of several jurisdictions that prohibits the assignability of certain causes of action, regardless of how the assignment is accomplished.[1] *See, e.g., Chaffee v. Smith*, 98 Nev. 222, 223-24, 645 P.2d 966, 966 (1982) (generally prohibiting the assignment of unasserted legal malpractice claims on public policy grounds); *Gruber v. Baker*, 20 Nev. 453, 469, 23 P. 858, 862 (1890) (voiding the assignment of a right to bring a claim in action for fraud as being contrary to public policy because a fraud claim is personal to the one defrauded); *accord Miller v. Jackson Hosp. & Clinic*, 776 So. 2d 122, 125 (Ala. 2000) (acknowledging the general rule that "purely personal" tort claims are not assignable); *Webb v. Gittlen*, 174 P.3d 275, 278 (Ariz. 2008) (holding that most claims are generally assignable "except those involving personal injury"). For example, in *Prosky v. Clark*, this court held that fraud claims are not assignable because they "are personal to the one defrauded." 32 Nev. 441, 445, 109 P. 793, 794 (1910). And in

---

[1]Respondents argue that their acquisition of Reynolds' things in action at a sheriff's execution sale was a purchase, not an assignment, such that any restrictions on the assignability of Reynolds' claims should not apply. The only difference between an "assignment" and a "sale," however, is the payment of consideration. *Compare Assignment, Black's Law Dictionary* (11th ed. 2019) (defining an "assignment" as "[t]he transfer of rights or property"), *with Sale, id.* (defining a "sale" as "[t]he transfer of property or title *for a price*" (emphasis added)). Our jurisprudence has not drawn a distinction between property acquired by judicial sale and property acquired by assignment, and we decline to do so now. *See, e.g., Gallegos*, 127 Nev. at 582, 255 P.3d at 1289 (holding that a judicially assigned right of action was personal property subject to execution to satisfy a judgment); *Sportsco Enters.*, 112 Nev. at 627-28, 917 P.2d at 935 (considering competing interests in property assigned by both a voluntary sale and an execution sale).

*Maxwell v. Allstate Insurance Co.*, we held that subrogation clauses allowing the assignment of claims in insurance contracts violated public policy due to the potential that only the insurer would receive payments from a personal injury action. 102 Nev. 502, 506-07, 728 P.2d 812, 815 (1986) (holding that such a result would deprive the injured party of "his actual damages [and] the benefit of the premiums he has paid"). Such public policy concerns do not arise, however, when an injured party assigns away the right to proceeds from a personal injury action, rather than the claim itself. *See Achrem v. Expressway Plaza Ltd.*, 112 Nev. 737, 739-41, 917 P.2d 447, 448-49 (1996) (observing that there is a distinction "between assigning the rights to a tort action and assigning the proceeds from such an action"). This is because the assignment of the proceeds from a tort action still permits the injured party to retain control of his lawsuit "without any interference" from a third-party assignee. *Id.* Other claims, such as contract claims, are generally assignable unless they are personal in nature. *See, e.g., Ruiz v. City of N. Las Vegas*, 127 Nev. 254, 261-62, 255 P.3d 216, 221 (2011) (recognizing that contracts are freely assignable, subject to certain limitations); 6 Am. Jur. 2d *Assignments* § 46 (2018) (explaining that claims based on "contracts of a purely personal nature" are an exception to the rule that "choses in action are generally assignable").

Nevada's statutory scheme governing the enforcement of judgments requires the sheriff's office to carry out a writ of execution by "collecting [and] selling the [debtor's] things in action and selling the other property." NRS 21.110. But, because "a judgment creditor can acquire no greater right in the property levied upon than that which the judgment debtor possesses," a judgment debtor's property is not subject to execution "unless the debtor has power to pass title to such property or

interest in property by his . . . own act." 30 Am. Jur. 2d *Executions and Enforcement of Judgments* § 118 (2017). In other words, "not *every* interest in property a debtor may have a right to . . . may be subjected to sale under execution." *Shaw v. Frank*, 334 S.W.2d 476, 480-81 (Tex. Civ. App. 1959) (emphasis added). Thus, while there can be no doubt that Reynolds' claims are "things in action" in his hands, such that they allow him to bring an action for recovery, *see Gallegos*, 127 Nev. at 582, 255 P.3d at 1289, if the claims are not assignable, the sheriff cannot force sale of those claims to satisfy a judgment any more than Reynolds could assign them of his own volition. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Estep*, 873 N.E.2d 1021, 1025-26 (Ind. 2007) (invalidating the forced assignment of legal malpractice claims to satisfy a judgment because those claims were not assignable); *see also Scarlett v. Barnes*, 121 B.R. 578, 580 (W.D. Mo. 1990) (holding that, under Missouri law, whether a cause of action is exempt from attachment and execution depends on whether it is assignable); *Carbo Indus., Inc. v. Alcus Fuel Oil, Inc.*, 998 N.Y.S.2d 571, 572 (Sup. Ct. 2014) (applying New York law that requires property to be assignable in order for it to be reached to satisfy a judgment); *cf. Craft v. Craft*, 757 So. 2d 571, 572 (Fla. Dist. Ct. App. 2000) (observing that personal injury claims are not assignable and thus not reachable in execution sales). Having concluded that only assignable claims are subject to execution, our resolution of respondents' motion depends on whether each of appellants' claims was assignable and therefore properly executed on.

*Tort claims for personal injury are generally not assignable*

As stated above, Nevada generally prohibits the assignment of tort claims on public policy grounds, as many tort claims are personal in nature and meant to recompense the injured party. *See, e.g., Maxwell*, 102 Nev. at 506, 728 P.2d at 815 (rejecting the subrogation of tort claims via an

SUPREME COURT
OF
NEVADA

(O) 1947A

insurance contract on public policy grounds); *Prosky*, 32 Nev. at 445, 109 P. at 794 (recognizing that fraud claims are not assignable due to their personal nature). *But see Achrem*, 112 Nev. at 740-41, 917 P.2d at 449 (allowing the assignment of proceeds from a tort action). Two of appellants' claims fall into this category. The first, fraud/intentional misrepresentation, has already been held to be personal in nature and unassignable. *See Prosky*, 32 Nev. at 445, 109 P. at 794. The second, elder exploitation, presents a question of first impression as to whether it is assignable.

The elder exploitation statute's plain language clearly provides that only the older person can bring the claim. *See Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 579-80, 97 P.3d 1132, 1135 (2004) (explaining that this court "will not go beyond the language of [a] statute" where "the plain meaning of [the] statute is clear on its face"). Indeed, NRS 41.1395(1) provides that "if an older person . . . suffers a loss of money or property caused by exploitation, the person who caused the . . . loss is liable *to the older person*." (Emphasis added.) And while NRCP 17(a) permits a party to "sue in their own names without joining the person for whose benefit the action is brought" under certain circumstances, none of those circumstances exist here. Respondents neither claim to be any of the parties entitled to bring claims without naming appellants as the real parties in interest, *see* NRCP 17(a)(1)(A)-(F) (listing parties, such as guardians and trustees, that can bring claims in their own name without joining the real party in interest), nor does the elder exploitation statute allow a party other than the affected older person to bring a claim for damages, *see* NRCP 17(a)(1)(G) (permitting a party authorized by statute to maintain a cause of action without joining the injured party); NRS

SUPREME COURT
OF
NEVADA

(O) 1947A

9

41.1395(1) (providing that the liability for an elder exploitation claim lies to the older person with no language permitting another party to maintain such a claim on the elder person's behalf).[2]

Here, permitting respondents to purchase appellants' fraud and elder exploitation claims implicates the same policy concerns addressed in *Maxwell* and *Achrem*: it strips appellants of their right to pursue their personal injury claims by essentially "plac[ing] the right to appeal on an auction block." *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1077 (10th Cir. 2009) (Lucero, J., concurring).[3] *See also Villanueva v. First Am. Title Ins. Co.*, 740 S.E.2d 108, 110 (Ga. 2013) (noting that Georgia has codified the common-law principle that personal injury claims cannot be assigned); *N. Chi. St. Ry. Co. v. Ackley*, 49 N.E. 222, 225 (Ill. 1897) (voiding the sale or assignment of personal injury claims on public policy grounds so that personal injury claims would not become a "commodity of sale"); *MP Med. Inc. v. Wegman*, 213 P.3d 931, 936 (Wash. Ct. App. 2009) (disapproving of the purchase of appealed claims at an execution sale because "allowing one party to destroy the opposing party's appeal by becoming its owner through enforcement of the very judgment under review is fundamentally unjust"). Having concluded that appellants' claims for

---

[2]In comparison, NRS 41.085(2) explicitly permits an heir to maintain a personal cause of action for wrongful death without bringing it in the name of the decedent or joining the decedent to the action.

[3]*RMA Ventures* also involved a defendant purchasing a plaintiff's claims and then moving to dismiss the appeal regarding those claims. 576 F.3d at 1075. The court ultimately ruled in the defendant's favor based on Utah law that expressly allows a party to purchase its opponent's claims and dismiss them, but noted its "degree of discomfort" with the result. *Id.* (citing *Applied Med. Techs., Inc. v. Eames*, 44 P.3d 699 (Utah 2002)).

fraud and elder exploitation are personal to Reynolds, those claims are not assignable and thus were not subject to execution. Respondents therefore did not acquire those claims at the sheriff's sale, and as a result, we deny respondents' motion to substitute in as appellants and dismiss these claims.

*Tort claims for injury to property are generally assignable*

This court also has not yet considered whether a claim for negligent misrepresentation is assignable. "A determination of whether a cause of action is assignable should be based upon an analysis of the nature of the claim to be assigned and on an examination of the public policy considerations that would be implicated if assignment were permitted." 6A C.J.S. *Assignments* § 42 (2016) (recognizing that, aside from claims to recover personal damages or claims involving personal or confidential relationships, claims are generally, but not always, assignable); *see also Christison v. Jones*, 405 N.E.2d 8, 10 (Ill. App. Ct. 1980) (examining "the nature of the cause of action . . . and . . . public policy considerations" as part of its analysis to determine whether certain claims are assignable), *superseded by statute on different grounds as stated in Hoth v. Stogsdill*, 569 N.E.2d 34, 38 (Ill. App. Ct. 1991); *Webb*, 174 P.3d at 278 (providing that, "absent legislative direction, public policy considerations should" be weighed when considering whether a claim is assignable).

In *Bill Stremmel Motors, Inc. v. First National Bank of Nevada*, 94 Nev. 131, 134, 575 P.2d 938, 940 (1978), this court adopted section 552 of the Second Restatement of Torts and limited claims for negligent misrepresentation to only those claims resulting in pecuniary loss. *See* Restatement (Second) of Torts § 552 (Am. Law Inst. 1977); *see also Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 120 Nev. 777, 782, 101 P.3d 792, 795-96 (2004) (limiting damages for negligent misrepresentation to the "out-of-pocket damages" suffered). In so doing,

 

Nevada rejected the "somewhat broader liability" that other jurisdictions recognize that allows negligent misrepresentation claims to proceed when the alleged damage is the risk of physical harm rather than pecuniary loss. *See id.*; Restatement (Second) of Torts § 311 cmt. a (Am. Law Inst. 1965) (recognizing the contrast between jurisdictions that allow negligent misrepresentation claims for risk of physical harm and those that only allow such claims for pecuniary loss). Under this more limited approach, Nevada law only recognizes negligent misrepresentation claims in the context of business transactions. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998) (stating that negligent misrepresentation "only applies to business transactions"). Given that negligent misrepresentation claims in Nevada only arise out of pecuniary loss, it is clear that the nature of such a claim is not to recover for a personal injury, but instead is more akin to a claim seeking recovery for a loss of property. *Cf. Stalk v. Mushkin*, 125 Nev. 21, 26-27, 199 P.3d 838, 841-42 (2009) (acknowledging a difference between torts that cause injury to property and torts that cause injury to a person). Claims alleging damages to property, rather than personal damages, are generally assignable. *See, e.g., TMJ Haw., Inc. v. Nippon Tr. Bank*, 153 P.3d 444, 452 (Haw. 2007) (recognizing that property tort claims, "*i.e.*, those that arise out of an injury to the claimant's property or estate," are generally assignable); *Gremminger v. Mo. Labor & Indus. Relations Comm'n*, 129 S.W.3d 399, 403 (Mo. Ct. App. 2004) (stating that Missouri allows the assignment of tort claims, including misrepresentation claims, when an estate "has been injured, diminished or damaged" (quoting *State ex rel. Park Nat'l Bank v. Globe Indem. Co.*, 61 S.W.2d 733, 736 (Mo. 1933))); 6A C.J.S. *Assignments* § 50 (2016) (explaining that rights of action in tort involving damage to property are generally assignable).

Additionally, because a claim for negligent misrepresentation in Nevada can only be based on pecuniary loss, assigning such claims does not implicate the same public policy concerns this court observed in *Prosky*, 32 Nev. at 445, 109 P. at 794, and *Maxwell*, 102 Nev. at 506-07, 728 P.2d at 815, because they do not include "non-economic losses such as physical pain and mental anguish." *Maxwell*, 102 Nev. at 507, 728 P.2d at 815. As the losses for a negligent misrepresentation claim are limited to purely monetary losses, assigning appellants' rights to their negligent misrepresentation claim is more akin to the assignment of proceeds from a personal injury tort than to the assignment of the claim itself. *See Achrem*, 112 Nev. at 739-41, 917 P.2d at 448-49 (noting with approval that some jurisdictions allow assignment of the proceeds of a tort action where the assignor retains control of the action).

Based on the foregoing, we hold that while claims for personal injury torts are not assignable, when a tort claim alleges purely pecuniary loss, as is the case with appellants' negligent misrepresentation claim, the claim may be assigned. And, because the claim may be assigned, it is subject to execution in satisfaction of a judgment. *Compare Gallegos*, 127 Nev. at 582, 255 P.3d at 1289 (allowing assignment and execution of contract-based rights of action), *with Chaffee*, 98 Nev. at 223-24, 645 P.2d at 966 (disallowing execution on a claim for legal malpractice because it was not assignable). Other jurisdictions have come to similar conclusions and allowed the assignment of tort claims affecting property while prohibiting the assignment of personal injury tort claims. *See, e.g., St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, 293 P.3d 661, 665 (Idaho 2013) (explaining that personal injury torts are generally not assignable, but distinguishing tort claims that result in property damage); *Scottsdale Ins. Co. v. Addison*

SUPREME COURT
OF
NEVADA

(O) 1947A

13

*Ins. Co.*, 448 S.W.3d 818, 829 (Mo. 2014) (explaining that causes of action for torts that cause injury to property are assignable, but personal injury torts are not). Because appellants' claim for negligent misrepresentation is a property tort, we conclude that this claim was properly assigned to respondents at the sheriff's execution sale. Respondents' motion to substitute in place of appellants and to dismiss this appeal as to the negligent misrepresentation claim is therefore granted.

*Contract-based claims are generally assignable*

Appellants' final claim is for breach of contract. Under Nevada law, contract-based claims in action are generally assignable and thus "subject to execution in satisfaction of a judgment," unless personal in nature. *Gallegos*, 127 Nev. at 582, 255 P.3d at 1289; *see also* 6 Am. Jur. 2d *Assignments* § 15 (2018) (explaining the general rule that "unless an assignment would add to or materially alter the obligor's duty of risk," the contract itself restricts assignability, or the assignment would violate a statute, "most rights under contracts are freely assignable"). *But see HD Supply Facilities Maint., Ltd. v. Bymoen*, 125 Nev. 200, 204-05, 210 P.3d 183, 185-86 (2009) (providing an exception to the general rule that breach of contract claims are generally assignable for personal service contracts); *Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 120 Nev. 168, 176, 87 P.3d 1054, 1060 (2004) (observing that noncompete agreements are "personal in nature and therefore are not assignable absent the employee's express consent"). Appellants present no argument to depart from this general rule, and we find no reason to do so as the contract at issue is not a personal service contract. Therefore, respondents' motion to substitute themselves for appellants and to dismiss this appeal as to appellants' breach-of-contract claim is granted.

## CONCLUSION

Because appellants' claims for fraud and elder exploitation are personal in nature, they are not assignable and thus were not subject to execution at the sheriff's sale. Therefore, respondents did not acquire these claims at the execution sale, and we deny their motion to substitute themselves for appellants and to dismiss this appeal as to the fraud and elder exploitation claims. Having further concluded that appellants' claims for negligent misrepresentation and breach of contract are assignable and subject to execution, we grant respondents' motion to substitute themselves for appellants as to those claims and to voluntarily dismiss this appeal as to those claims. Accordingly, we reinstate briefing solely as to the summary judgment on appellants' claims for fraud and elder exploitation. Respondents shall have 30 days from the date of this opinion to file and serve the answering brief.[4] Thereafter, briefing shall proceed in accordance with NRAP 31(a)(1).

_____, J.
Silver

We concur:

_____, J.
Hardesty

_____, J.
Stiglich

---

[4]To the extent appellants' opening brief addresses their claims for negligent misrepresentation and breach of contract, respondents need not respond to those arguments, as we will not address them in resolving this appeal.

SUPREME COURT
OF
NEVADA

(O) 1947A